## Case No. 16,055.

### UNITED STATES v. PLUMER.

[3 Cliff. 1.] [1]

Circuit Court, D. Massachusetts. July 2, 1859.

#### SUPREME COURT—JURISDICTION IN CRIMINAL CASES.

A writ of error does not lie from the supreme court to the circuit court in a criminal case.

[Cited in Sanders v. State. 85 Ind. 326.]

This was a petition for the allowance of a writ of error in a capital case, and for stay of execution until a hearing could be had in the supreme court, on the alleged errors. Plumer, with three others, had been indicted, tried, and convicted in the circuit court, Massachusetts district, and sentenced to be executed.

The material facts of the record were as follows:

#### United States of America.

Circuit Court of the United States of America, for the District of Massachusetts.

At a circuit court of the United States of America, for the district of Massachusetts, begun and holden at Boston, within and for said district, on the 15th of October, A. D. 1858.

Before the Honorable Nathan Clifford, Associate Justice, and the Honorable Peleg Sprague, District Judge. . . . .

(Here follows the indictment.)

The record then proceeds as follows, namely:

At this present October term of this court, A. D. 1858, said Cyrus Plumer, otherwise called Cyrus W. Plumer, William H. Carther, otherwise called Richard Carther, William Herbert, and Charles H. Stanley, otherwise called John W. Ballard, were severally set to the bar, and had this indictment read to them; and thereupon they severally said that thereof they were not guilty; and thereof for trial put themselves upon God and their country; and then Benjamin F. Butler and Charles P. Chandler were assigned by the court as counsel for said Plumer; F. F. Heard and F. W. Pelton were assigned as counsel for said Carther; Thornton K. Lothrop and J. Q. Adams were assigned as counsel for said Herbert; and J. Hardy Prince and Samuel M. Quincy were assigned as counsel for said Charles H. Stanley, otherwise called John W. Ballard; and said Cyrus Plumer, otherwise called Cyrus W. Plumer, William H. Carther, otherwise called Richard Carther, William Herbert, and Charles H. Stanley, otherwise called John W. Ballard, severally acknowledged that they had severally received a copy of the indictment, and a list of the jurors, agreeably to law, and more than two days before the date of their trial.

A jury was thereupon impanelled and sworn to try the issue, namely, John B.

Chisholm, foreman, and fellows, namely, Willard Bacon, Daniel C. Bates, Lemuel Grant, Charles Humphrey, Asher Joslin, Charles B. W. Lane, Benjamin Norris, Hiel J. Nelson, William Parker, William Tinker, and Amasa Whiting, all of said district.

And the said jury afterwards returned their verdict that said Cyrus Plumer, otherwise called Cyrus W. Plumer, is guilty of murder as alleged in said indictment; and William H. Carther, otherwise called Richard Carther, William Herbert, and Charles H. Stanley, otherwise called John W. Ballard, are severally guilty of manslaughter; and thereupon said Cyrus Plumer, otherwise called Cyrus W. Plumer, by his counsel, moves the court for a new trial, as follows:

(Here follows the motion for a new trial; also the motion in arrest of judgment.)

The record then proceeds as follows, namely:

Time was allowed by the court for preparation of counsel therein, and the said motions were set down for hearing. And afterwards, at the same term, the counsel of said Plumer moved the court for leave to withdraw the said motions for new trial and in arrest of judgment. And said Cyrus Plumer, otherwise called Cyrus W. Plumer, having been brought into court, and being inquired of personally, asks that such leave may be granted and that the said motions may be withdrawn. Whereupon the court did grant him leave to withdraw the said motions, and the same were accordingly waived and withdrawn by said Plumer; said Plumer was then asked if he had anything to say why judgment of death should not then be pronounced against him. And having replied thereto fully, and no good cause appearing to the contrary, and all matters in the case having been fully heard and understood by the court, it is considered by the court that the said Cyrus Plumer, otherwise called Cyrus W. Plumer, be deemed guilty of felony, and that he, the said Cyrus Plumer, otherwise called Cyrus W. Plumer, be taken back to the place from whence he came, and there remain in close confinement until Friday, the 24th of June next; and on that day, between the hours of eleven o'clock in the forenoon and one o'clock in the afternoon, he, the said Cyrus Plumer, otherwise called Cyrus W. Plumer, be taken thence to the place of execution, and that he be there hanged by the neck until he be dead.

#### The Petition.

#### United States of America.

Circuit Court of the United States of America, for the District of Massachusetts.

To the Honorable Nathan Clifford, one of the Justices of the Supreme Court of the United States, sitting within and for the District of Massachusetts.

Cyrus W. Plumer now imprisoned in the district aforesaid, under sentence of death

---

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

on a judgment, warrant, process, and proceeding of the said circuit court of the United States of America, for the district of Massachusetts, says that there is manifest error in the process, proceedings, premises, and judgment, and feeling aggrieved thereby, assigns as errors in said record, process, and proceeding the errors named and set forth in the paper hereunto annexed, marked "Assignment of Errors."

The said Cyrus W. Plumer, plaintiff in error, begs the court to certify the errors in said assignment named and set forth, and that he may have leave to enter the same in the supreme court of the United States at the next December term of said supreme court, and that execution and all proceedings in said case, and in the premises, may be stayed until a hearing is had in said court on said assignment of errors.

Cyrus W. Plumer.

Boston, June 30, 1859.

Assignment of Errors:<br>United States of America.

Circuit Court of the United States of America, for the District of Massachusetts.

Cyrus Plumer, otherwise called Cyrus W. Plumer, Plaintiff in Error, v. The United States of America, Defendant in Error.

And now, to wit, on the 30th of June, A. D. 1859, cometh the said Cyrus Plumer, otherwise called Cyrus W. Plumer, in his proper person, who is now imprisoned in the district of Massachusetts, under sentence of death, on a judgment, warrant, process, and proceeding of the said circuit court of the United States of America, for the district of Massachusetts, and immediately saith that in the record and process aforesaid, and also in the giving of the judgment aforesaid, against him the said Cyrus Plumer, otherwise called Cyrus W. Plumer, there is manifest error in these, to wit:

1. That in and by said indictment and record, there is no sufficient averment that the circuit court in which said indictment was returned and heard, had jurisdiction of the offence therein supposed to be charged.

2. That in and by said indictment and record, there is no sufficient averment that the person therein supposed to be injured was within, or under the protection of or jurisdiction of, the United States, or in the peace thereof.

3. That in and by said record it nowhere appears, or is set forth, that said Cyrus Plumer, otherwise called Cyrus W. Plumer, was informed of, or permitted to exercise, or did exercise, his constitutional right of challenge of the jurors returned for his trial.

4. That in and by said record it nowhere appears or is set forth that said Plumer was present, either at the impanelling of the jury that tried him, or at the time said trial was had, or said verdict was rendered against him.

5. That in and by said record it nowhere

appears that said Plumer was permitted to be heard by said jury so impanelled, either by himself or his counsel; and that in truth and in fact said Plumer was not permitted to address the jury in his own proper person.

6. That said verdict of guilty was rendered upon all the counts of said indictment, while one or more of said counts are defective and insufficient in law to support any judgment.

7. That it nowhere appears in and by said record of what (if any) felony said Plumer was adjudged guilty.

8. That it nowhere appears by said record of what "felony" the court "deemed" or adjudged the said Plumer to be "guilty."

9. That it nowhere appears by said record for what "felony" said Plumer was sentenced to suffer death.

10. That it nowhere appears in and by said record that Plumer received sentence of death for the particular murder of which the jury had found him guilty; but only for "felony" indefinitely, the particular felony not being described or in any manner designated.

11. That the verdict is repugnant to the general averment and clause in the indictment giving the court jurisdiction.

12. That said indictment does not appear to be signed by the foreman of the grand jury.

13. That it does not appear that the verdict of said jury was rendered in open court, and in the presence of the defendant.

14. That said record is in other respects informal, insufficient, erroneous, and the judgment thereon void and of no effect.

15. That by the said record it appears that judgment upon the indictment aforesaid was given against him, the said Cyrus Plumer, otherwise called Cyrus W. Plumer, in form aforesaid, whereas judgment by the said circuit court of the United States ought to have been given for the said Plumer that he be thereof acquitted and go thereupon without day. Therefore in that there is manifest error.

And the said Cyrus Plumer, otherwise called Cyrus W. Plumer, prays that the said judgment aforesaid, for the errors being in the record and process aforesaid, may be reversed and annulled, and absolutely be had for nothing, and that he may be restored to the common law of this land, and to all things which he hath lost on the present occasion.

Cyrus Plumer, otherwise called<br>Cyrus W. Plumer.

Boston, June 30, 1859.

Benjamin F. Butler, Geo. W. Searle, and F. F. Heard, for petitioner.

C. L. Woodbury, U. S. Dist. Atty., and Milton Andros, Asst. U. S. Dist. Atty.

Mr. Searle's argument:

The first proposition we attempt to maintain is this, that, as the acts of congress now stand, the supreme court is constitutionally bound to take appellate jurisdiction, in all

cases whatsoever, both civil and criminal, arising under the constitution and laws of the United States, except where it has original jurisdiction, and that the decision of the supreme court (U. S. v. Moore, 3 Cranch [7 U. S.] 159), repudiating appellate jurisdiction in all cases, except where congress had specially granted it, was erroneous.

In other words, we attempt to maintain that the existing acts of congress, if rightly interpreted, make no "exceptions" whatever to the appellate jurisdiction of the supreme court, as conferred by the constitution; and that it is only by false interpretations, that those acts have ever been held to exclude from the appellate jurisdiction of the supreme court any case whatever, civil or criminal, arising under the constitution and laws of the United States, and not included in the original jurisdiction of that court.

This proposition, we claim, is established by the following arguments:—

1st. The entire jurisdiction, both original and appellate, of the supreme court of the United States is conferred by the constitution itself, and not by act of congress. Const. art. 3, § 2.

The language of the constitution on this point is:—

1. "The judicial power shall extend to all cases, in law and equity, arising under this constitution, the laws of the United States," etc., etc.

2. "In all cases affecting ambassadors, other public ministers, and consuls, and those in which a state shall be a party, the supreme court shall have original jurisdiction. In all the other cases before mentioned, the supreme court shall have appellate jurisdiction, both as to law and fact, with such exceptions and under such regulations as the congress shall make."

2d. The supreme court itself has acknowledged that at least its original jurisdiction was conferred by the constitution itself, and not by act of congress. Thus they say:—

"Of all the courts which the United States may, under their general powers, constitute, one only, the supreme court, possesses (an original) jurisdiction derived immediately from the constitution, and of which the legislative power cannot deprive it. All other courts created by the general government possess no jurisdiction but what is given them by the power (congress) that creates them." U. S. v. Hudson, 7 Cranch [11 U. S.] 32.

Here the court asserts that at least its original jurisdiction is derived immediately from the constitution. Yet its appellate jurisdiction is just as clearly conferred by the constitution as its original jurisdiction, as the clauses quoted from the constitution show.

The only difference in the two cases is this, that congress is authorized, if it see fit, to make "exceptions" and "regulations" as to the appellate jurisdiction, but have no such power in regard to the original jurisdiction.

Until "exceptions" are made by congress to the appellate jurisdiction conferred by the constitution, that jurisdiction includes all cases whatsoever, civil and criminal, arising under the constitution and laws of the United States, etc., except such as are included in the original jurisdiction.

The point we contend for is, that congress has no power whatever affirmatively to confer appellate jurisdiction on the supreme court. It only has a discretionary power to "make exceptions" to the general appellate jurisdiction conferred by the constitution, and also to "make regulations" by which this general appellate jurisdiction shall be exercised.

The supreme court itself virtually acknowledges this proposition. U. S. v. Moore, 3 Cranch [7 U. S.] 159.

Now we say that inasmuch as a general appellate jurisdiction in all cases, etc., whatsoever, except where the supreme court has original jurisdiction, is affirmatively conferred by the constitution itself; and inasmuch as congress has no power at all (on this precise point of the courts having appellate jurisdiction), save to "make exceptions" to this general appellate jurisdiction conferred by the constitution; and inasmuch also as all such "exceptions" are against equality and right, and adverse to the ascertainment of truth and the accomplishment of justice, and also adverse to uniformity and certainty in the law, all such "exceptions" must be expressly and affirmatively made. They cannot be implied from any acts of congress whatever, much less can they be implied negatively or unnecessarily from any acts of congress.

We now say further that congress has never expressly and affirmatively made any "exceptions" whatever to the general appellate jurisdiction conferred upon the supreme court by the constitution. The supreme court itself makes no pretence that any such "exceptions" have been expressly and affirmatively made by any act of congress.

All that congress has done is this: it has passed acts purporting affirmatively to confer upon the supreme court appellate jurisdiction in certain cases where the same jurisdiction had been previously conferred by the constitution.

All such grants by congress, of a jurisdiction already conferred by the constitution, and already possessed by the court, are obviously gratuitous, extra-constitutional, and void, since (it may be repeated) congress has no power to confer any appellate jurisdiction at all, but only to "make exceptions" to the appellate jurisdiction conferred by the constitution.

And yet, from these gratuitous, extra-constitutional, and void grants by congress of an appellate jurisdiction (already conferred by the constitution itself, and already possessed by the court) in certain cases, the

court has implied, and that too, negatively and unnecessarily, an "exception" to, or denial of, the appellate jurisdiction conferred by the constitution in all other cases.

And this negative and unnecessary implication from these gratuitous, extra-constitutional, and void grants by congress of an appellate jurisdiction in certain cases, constitutes the only ground on which the court now repudiates the appellate jurisdiction conferred upon it by the constitution in all other cases. U. S. v. Moore, 3 Cranch [7 U. S.] 159.

Now we insist that the appellate jurisdiction conferred upon the supreme court by the constitution itself—a jurisdiction so important, not merely to uniformity and certainty in the law, but also to equality, truth, justice, and right—cannot be taken away by any such negative and unnecessary implication, from extra-constitutional and void acts of congress; but that it can be taken away only by constitutional and valid acts of congress specially and affirmatively "making exceptions" to the general appellate jurisdiction conferred by the constitution.

But let us see what is the argument of the court in favor of this implication. We give their opinion entire:

Marshall. Circuit Justice, delivered the opinion of the court as follows:

"This is an indictment against the defendant for taking fees, under color of his office, as a justice of the peace, in the District of Columbia.

"A doubt has been suggested respecting the jurisdiction of this court, in appeals on writs of error, from the judgments of the circuit court for that District, in criminal cases; and this question is to be decided before the court can inquire into the merits of the case.

"In support of the jurisdiction of this court, the attorney general has adverted to the words of the constitution, from which he seemed to argue that as criminal jurisdiction was exercised by the courts of the United States, under the description of 'all cases' in law and equity, arising under the laws of the United States, and as the appellate jurisdiction of this court was extended to all enumerated cases, other than those which might be brought on 'originally,' 'with such exceptions and under such regulations, as the congress shall make,' that the supreme court possessed appellate jurisdiction in criminal as well as civil cases, over the judgments of every court, whose decisions it would review, unless there should be some one exception or regulation made by congress, which should circumscribe the jurisdiction conferred by the constitution.

"This argument would be unanswerable, if the supreme court had been created by law, without describing its jurisdiction. The constitution would then have been the only standard by which its powers could be tested, since there would be clearly no congressional regulation or exception on the subject.

"But as the jurisdiction of the court has been described, it has been regulated by congress, and an affirmative description of its powers must be understood as a regulation, under the constitution, prohibiting the exercise of other powers than those described.

"Thus the appellate jurisdiction of this court, from the judgments of the circuit courts, is described affirmatively. No restrictive words are used. Yet it has never been supposed that a decision of a circuit court could be reviewed, unless the matter in dispute should exceed the value of $2.000. There are no words in the act restraining the supreme court from taking cognizance of causes under that sum; their jurisdiction is only limited by the legislative declaration, that they may re-examine the decisions of the circuit courts, when the matter in dispute exceeds the value of $2.000.

"The court, therefore, will only review those judgments of the circuit court of Columbia, a power to re-examine which is expressly given by law (act of congress). On examining the act 'concerning the District of Columbia,' the court is of opinion that the appellate jurisdiction granted by that act is confined to civil cases.

"The words 'matter in dispute' seem appropriated to civil cases, where the subject in contest has a value beyond the sum mentioned in the act. But in criminal cases, the question is the guilt or innocence of the accused. And although he may be fined upwards of $100, yet that is, in the eye of the law, a punishment for the offence committed, and not the particular object of the suit. The writ of error, therefore, is to be dismissed, this court having no jurisdiction of the case." U. S. v. Moore, 3 Cranch [7 U. S.] 159.

This argument of the court has two palpable fallacies, inconsistent with each other, yet either of them sufficient to defeat the conclusion arrived at. The court attempt to blend these two fallacies. Or rather, they fly from one to the other, as occasion requires, as if to avoid being caught in either. The fallacies are these:—

1. One part of their argument seems to assume that the appellate jurisdiction of the supreme court is derived from the act of congress, instead of the constitution; and that the court can therefore have no appellate jurisdiction, except what the act of congress confers. Whereas the truth is that its appellate, like its original jurisdiction, is derived wholly from the constitution, and not at all from the act of congress; and consequently exists in all cases enumerated in the constitution, unless congress have "made exceptions," or taken it away in specific cases.

2. Another part of their argument seems to assume that their appellate jurisdiction is derived from the constitution; and that it therefore necessarily exists in all cases enumerated in the constitution, unless congress have "made exceptions" thereto. So far well. But they then proceed to say that, congress

having affirmatively described this appellate jurisdiction in civil suits, where "the matter in dispute exceeds the value of $2,000," this simple "affirmative description" of the jurisdiction in those cases "must be understood as a regulation under the constitution prohibiting" the appeal, not only in all civil suits for a less sum than $2,000, but also in all criminal cases whatsoever.

How monstrous this reasoning and conclusion are will be seen when it is considered that the "exceptions" and "regulations" which congress are authorized to make in regard to the appellate jurisdiction of that court are two wholly different things, and have wholly different objects in view. The object of the "exceptions" is to declare that the class of cases included in them shall not be appealed at all.

The object of the "regulations" is to prescribe the conditions under which, and provide the means by which, another class of cases may be appealed. There is, therefore, no analogy whatever between the "exceptions" and the "regulations" which congress are authorized to make. And yet the court have confounded the two; and solely on this confusion of the two they base their decision, withholding the appeal.

The language of the constitution is perfectly clear, as follows: "In all the other cases before mentioned, the supreme court shall have appellate jurisdiction, both as to law and fact, with such exceptions and under such regulations as the congress shall make."

It is here plain that the words "exceptions" and "regulations" mean two different things, because the sole object of the "exceptions" (nobody can doubt) is to particularize what cases shall not be appealed, whereas the "regulations" relate only to those cases that are to be appealed. This is certain, since it is "under" the "regulations" that cases are to be appealed.

Now contrast the language of the court with this clear language of the constitution. Thus the court say: "But as the jurisdiction of the court has been described, it has been regulated by congress, and an affirmative description of its powers must be understood as a 'regulation' under the constitution, prohibiting the exercise of other powers than those described."

Here the court ignore altogether the word "exceptions," as used in the constitution, and then assume that it is by "regulations" that certain cases are to be excluded from appeal. Whereas the language of the constitution is explicit, to wit, that it is by "exceptions" alone that cases are to be excluded from appeal, and that it is "under" (that is, in conformity with, or by means of) "regulations" that other cases are to be appealed.

Suppose the words "with such exceptions" had been left out of the constitution, and that the clause had read (as it then would have done) thus: "In all the other cases before mentioned the supreme court shall have appellate jurisdiction, both as to law and fact, under such regulations as the congress shall make."

Would congress then have been authorized to "except" any of the cases enumerated by the constitution itself from the appellate jurisdiction of the court? Plainly not. They would only have been authorized to make "regulations" "under" which all the cases enumerated by the constitution might be appealed.

If the words "exceptions" and "regulations," in this clause, had meant the same thing, the language of the constitution would not only have been tautological, but the powers granted to congress would have been widely different from what they are now. If, for example, the two words "exceptions" and "regulations" were to be held to mean the same thing, they must both be held to mean either "exceptions" or "regulations," for they could not mean the same thing, and yet mean both of these two different things. If then, the two words "exceptions" and "regulations" were held to mean only "exceptions," congress would have simply had the power to say that certain cases should not be appealed at all. They would have had no power to prescribe any "regulations" whatever, "under" which cases should be appealed. On the other hand, if the two words were to be held to mean only "regulations," then congress would have had no power to "make exceptions" of or to prohibit the appeal of any cases whatever. They could only have prescribed "regulations" "under" which all cases whatever might be appealed. But now, by giving different meanings to these two different words, congress gets two different powers, to wit, first, the power to forbid the appeal of certain cases; and, second, the power to prescribe the "regulations" "under" which all other cases may be appealed.

It being thus established that the words "exceptions" and "regulations," as used in this clause of the constitution, mean two wholly different things, and grant to congress two wholly different powers, there is left no foundation whatever for the decision of the court, that the regulations prescribed by congress, "under" which certain cases are to be appealed, must be considered as "exceptions" prohibiting the appeal of all other cases. These "regulations" apply only to the particular cases to which they purport to apply; and they leave all other cases to stand just as they would have done if the "regulations" had not been made.

These "regulations" governing the appeal in civil suits, where the matter in dispute exceeds $2,000, cannot legally be construed into "exceptions" prohibiting the appeal even of other civil suits, where less amounts are involved. Still less can they be construed into "exceptions" prohibiting appeals in criminal cases, which are not mentioned, and where not money, but life, liberty, and character are in issue. Such a construction would

not only be legally absurd, it would be morally atrocious.

To hold that a regulation prescribing the mode of appeal in a civil suit where $2,000 are at stake, shall, by implication, be deemed a prohibition upon any appeal in a criminal case, where one's life is at stake, would be an interpretation of law as ludicrous and grotesque as it would be brutal and inhuman. It is a maxim of universal application, that all interpretations are to lean to life and liberty. And neither the supreme court, nor any other decent court, has any excuse for disregarding, or for pretending ignorance of this maxim. And nothing, it would seem, but deliberate corruption would induce them to disregard it in this case.

If it be asked, what could have been the motive of congress in providing "regulations" under which the appeal of civil cases, where the amount involved exceeds $2,000, is to be made, unless it were to exclude all other cases from the right of appeal? One answer is, that we have nothing to do with the private motives of congress, but only with the legal effect of their enactments, the intentions they have legally conveyed. Another answer is, that it is presumable that congress may have thought some special "regulations" would be useful or proper in those cases, which would not be useful or proper in other cases.

But perhaps it will be asked, how can any case be appealed, except congress have first made "regulations" for its appeal? The answer is, that there are writs and forms of proceeding well known to the law. by which a superior court reviews the decisions of inferior courts; and the judiciary act of 1789, § 14 [1 Stat. 81], enacts: "That all the before-mentioned courts of the United States (including the supreme court) shall have power to issue writs of scire facias, habeas corpus, and all other writs not specially provided for by statute, which may. be necessary for the exercise of their respective jurisdictions, and agreeable to the principles and usages of law."

This provision alone would be ample to enable the supreme court to. take appellate jurisdiction in all cases tried in subordinate courts. In addition to all this, the fifth amendment to the constitution provides that "no person shall be deprived of life, liberty, or property, without due process of law."

It would seem that no narrower interpretation could possibly be given to this provision, than that it secures to a defendant, in a criminal case, all processes known to the common law, and appropriate to his case. It includes, for example, trial by jury. No one will deny this. But it also as much secures all other common-law forms of proceeding, as 'it does this one of trial by jury.

This amendment is subsequent in date to the constitution, and annuls any part of that instrument that is inconsistent with it. It may be reasonably questioned, therefore, whether this amendment does not absolutely annul that portion of the constitution which gave congress any discretionary power whatever to withhold the right of appeal in any criminal case whatever. At any rate, it is clearly sufficient to condemn all such absurd and preposterous implications as that on which alone the supreme court have hitherto refused to take appellate jurisdiction in criminal cases.

There is something marvelous in the obstinacy with which the supreme court have refused to take this appellate jurisdiction in defiance of a plain mandate of the constitution itself, and in obedience only to an unnecessary implication drawn from an act of congress, which (in so far as it purports to grant what had been already granted by the constitution, appellate jurisdiction in any case) is gratuitous, extra-constitutional, inoperative, and, legally speaking, an entire nullity; and which, therefore, gives no color of authority for such an implication.

Mr. Heard's argument:

Mr. Heard followed upon the errors assigned, and commenced upon the thirteenth error, as follows: "13. That it does not appear that the verdict of said jury was rendered in open court, and in the presence of the prisoner." He cited Archb. Cr. Pl. (13th Ed.) 146, and contended that it must appear on the record that the verdict was rendered in open court and in the presence of the prisoner, and that in this the record was insufficient.

He next took up the twelfth error assigned, namely, "12. That said indictment does not appear to be signed by the foreman of the grand jury," which he contended was necessary, though no authority was found for this point at common law. Eleventh error. "That the verdict is repugnant to the general averment and clause in the indictment giving the court jurisdiction."

The clause referred to is made up of the last four lines in the body of the indictment, namely, "And the jurors aforesaid, upon their oath aforesaid, do further present, that the district of Massachusetts is the district into which said Cyrus Plumer, otherwise called Cyrus W. Plumer, William H. Carther, otherwise called Richard Carther, William Herbert, Charles H. Stanley, otherwise called John W. Ballard, were first brought after committing the aforesaid 'offence.' "

This point was argued at length, and the leading case in England was cited in its support. O'Connell v. Reg., 11 Clark & F. 155; also, Holloway v. Reg., 2 Denison, Crown Cas. 287. Mr. Heard contended that the letter "s" saved O'Connell, and that the principle applied in that case applies to the case at bar. He also contended that the word "offence" should have been in the plural, inasmuch as the several prisoners were indicted for several offences, as murder, manslaughter, etc.

The errors assigned from the seventh to

the tenth, inclusive, were then considered, which are in substance, that it nowhere appears of what felony, if any, Plumer was "adjudged" guilty, or "deemed or adjudged guilty"; or for "what felony he suffered sentence of death"; or that he was sentenced to death for the particular murder of which he was found guilty by the jury. Whart. Cr. Law (2d Ed.) 151.

The second error assigned was then considered, which was that there was no sufficient averment that the person alleged to be injured was under the protection or within the jurisdiction of the United States. Under the general assignment of other errors and informalities in the record, the counsel raised the point that the action of the court was improperly put in the past tense, while he contended that it should have been put in the present tense, that the action of the parties might be in the past or present; reading from Gabbett (volume 2, p. 563), who also cited, in support of this point, Rex v. Perin, 2 Saund. 393 (6th Ed.). He also cited the case of U. S. v. Bird [Case No. 14,597], in support of another error, that no averment of issue joined appeared upon the record, and read also from Archbold in support of the same objection.

Again, under the general assignment, that it did not appear of what jury a list was acknowledged to be received by the prisoners "more than two days before the day of the trial." The record of U. S. v. Bird [supra] was cited as being correct on this point. It was also stated this case was the first under the crimes act of 1790.

Mr. Butler's argument:

Mr. Butler then addressed the court upon the general question whether a writ of error would lie in a criminal case to the supreme court. He said that if the errors assigned seemed mostly verbal and immaterial, there was no situation in which a man might better be excused for criticising such errors than one where he was contending for his life. He knew of nothing better calculated to fit any person for a full and fair examination of this case, than reading the opinion of Lord Mansfield in the Case of Wilkes [4 Burrows, 2527]. In the sparsity of writs of error in the circuit court of the United States, a degree of inaccuracy had crept into their records.

He said he referred to the originals of our laws on crimes which were to be found in the common law of England, and remarked that our laws had been modified by statutes and conformed to the institutions of our country. He said that the laws of the United States recognized two kinds of murder: one was murder and piracy on the high seas; and the other was wilful murder, which might be committed in any place.

He then took up the first and second errors assigned, and contended that in the indictment and record there was no sufficient aver-

ment of the jurisdiction of this court over the case at bar, and contended that a charge of piracy and murder "on the high seas" would fall under the jurisdiction of every nation or any which should first come at the offender.

But in an indictment of murder simply, the rule is different. It asserted that "it was on an American vessel." He contended that this would never be explicit enough until the time when our country shall comprise the whole of America.

There was also no averment that the vessel was under the protection of the United States, or that it was in the lawful business of the United States, nor that Archibald Mellen was a citizen of the United States; and that for all the record contained, he might have been a pirate, there being no averment that the injured person was under the protection of the United States.

He said that he was doing his whole duty in attempting to raise a reasonable doubt in the mind of the judge, and he contended that the prisoner should have the benefit of such a doubt now as much as when he was before the jury upon a question of fact.

In the third assignment there was nothing to show that the prisoner was allowed the privilege of challenging the jurors by whom he was tried; and he said that in a broad view this was not merely a technical point, but might be of great importance to those who shall come after us, if ever, hereafter, in stormy times, the country should be cursed with a Jeffreys on the bench. In Massachusetts, he said the right of challenge was almost taken away, which had resulted from the gradual encroachments of the courts, as well in this country as in England.

The fourth and thirteenth errors assigned were then considered, that there was no averment that the defendant was present at the time of impanelling the jury, during the trial, or at the return of the verdict. And in connection with this the counsel referred to the general error that the record was put in the past tense, citing copious authorities in support of this allegation of error. By the present tense the whole proceedings were recorded as they came up.

The fifth assignment was, "That in and by said record it nowhere appears that Plumer was permitted to be heard by the said jury so impanelled, by himself or his counsel; and that in truth and in fact Plumer was not permitted to address the jury in his own proper person." He said that here there was a double assignment, an error of law and an error of fact; and he argued that an error of fact would lie in the supreme court.

The sixth error was, that said verdict of guilty was rendered upon all the counts of said indictment, while one or more of said counts are defective and insufficient in law to support any judgment. One good count, the counsel was willing to allow, was sufficient upon which to find a verdict, but that the particular count

on which the defendant is found guilty must appear in the record.

He then criticised the record in the errors assigned from the seventh to the eleventh assignments inclusive, as not expressing what felony the said Plumer was found guilty of, insisting that the statute in this regard was nomen collectivum, and only meant to express that the defendant should be found guilty of the felony with which the indictment charged him; and he believed that in this opinion he would be supported by every good lawyer, that "the felony of which he was convicted" should be entered on the record.

Mr. Butler continued his argument by dwelling upon the question of the power of the judge to stay the execution, believing that if it was in his power, it would be the pleasure of the judge. He argued this point briefly, when the judge said that he had no doubt of the power of the court.

In concluding this part of his argument, he said that he had labored to raise a reasonable doubt in the mind of the court, that in all this mass of errors there were some which should be corrected; and for himself and for his client he did not care whether his honor tried the case again himself with his associate justice, or whether it were taken to the supreme court.

He then passed on to speak of the possibilities of a "writ of error" under the constitution of the United States, reading from the constitution the appellate jurisdiction belonging to the supreme court, and citing various cases under it, and said that Chief Justice Marshall first suggested a doubt on the subject in 1805, the same justice having passed over the same point sub silentio in 1802. This was the case of U. S. v. Simms, 1 Cranch [5 U. S.] 252, and the opinion, the counsel believed, was given with a determination that the president should not appoint any judges to take a certain prisoner out of the hands of the court. He criticised this opinion fully, and declared that the great chief justice had confounded the regulations made for one purpose and the exceptions made for another. In continuing his remarks he cited [Clarke v. Bazadone] 1 Cranch [5 U. S.] 212; [Dorousseau v. U. S.] 6 Cranch [10 U. S.] 307; [U. S. v. More] 3 Cranch [7 U. S.] 159; The Young Mechanic [Case No. 18,180]; [Ex parte Crane] 5 Pet. [30 U. S.] 203, in which the point was ruled by obiter decisions merely.

In closing, Mr. Butler made an earnest appeal for the rights of the subject when prosecuted by the government. He declared that the criminal jurisdiction of the supreme court will have to be enlarged, so that the peace of the country and the rights of the citizen might be secured against the arbitrary decisions of political judges, by having such cases reviewed by the high court, consisting of learned judges from all parts of the country, who would not be swayed by local prejudice.

The argument was then concluded with an expressed desire that his honor would seal a bill of exceptions to the supreme court, to get the minds of that court upon the case.

CLIFFORD, Circuit Justice. Plumer, the petitioner, with three others, to wit, William H. Carther, William Herbert, and Charles H. Stanley, on the 30th of October, 1858, was indicted for the crime of murder committed on board the ship Junior on the high seas. He was charged as principal, and the other three were joined in the same indictment as principals in the second degree. They were all seamen on board the ship Junior, an American vessel employed in a whaling voyage, and the charge was that the prisoners, on the 26th of December, 1857, on the high seas, when the ship was in the Indian Ocean, out of the jurisdiction of any particular state, feloniously, wilfully, and of their malice aforethought, murdered Archibald Mellen, the master of the vessel. Having been first brought into the district of Massachusetts after committing the offense, they were indicted in the circuit court for that district, under the fourth section of the act of the 3d of March, 1825, and the petitioner was found guilty, by the verdict of the jury, of the crime as charged in the indictment, but the other three were found guilty of manslaughter, and not guilty of the principal charge. Subsequent to the verdict, and before sentence, the petitioner filed a motion for new trial, alleging errors in the rulings of the court, and also a motion in arrest of judgment, alleging defects in the indictment, but both motions were afterwards withdrawn by the advice of his counsel, and at his own personal request, made in open court. Pending those motions, further proceedings in the case were suspended, but when they were waived and withdrawn, the district attorney moved for sentence, and the prisoner was set at the bar for that purpose. Inquiry was then made of the prisoner by the clerk, pursuant to the order of the court, whether he had anything to say why sentence of death should not be pronounced against him; and the court having heard and attentively considered his reply, and perceiving nothing therein to create any doubt as to the legality of his conviction, proceeded to pronounce against him the sentence of death set forth in the record as required by law. Throughout the trial both judges of the circuit court were present, and every ruling and proceeding in the trial were fully approved by both judges. Application is now made to the presiding justice at chambers for the allowance of a writ of error from the supreme court to the circuit court to remove the cause into the supreme court for the correction of certain alleged errors in the record, process, and proceedings in the trial, as specified in the paper accompanying the petition, called the assignment of errors. Some of the alleged errors are substantially the same as those which were set forth in the motion for new trial, and others are substantially the same as those set forth in the motion previously filed in arrest of judgment, both of which were waived and withdrawn before sentence. As assigned in the paper filed with the petition, the errors are fifteen in number; and the several assignments have all been very fully and ably argued by counsel appearing in

behalf of the petitioner; but I do not think it proper to decide the questions presented in the assignment of errors, nor any one of them, as I am of the opinion that a writ of error will not lie from the supreme court to the circuit court in a criminal case, and consequently, that the judges of the circuit, whether sitting in court or at chambers, have no jurisdiction to grant the prayer of the petition. The power to allow a writ of error, after final judgment in a civil action, is impliedly vested in a judge of the circuit court by the twenty-second section of the judiciary act, subject to the conditions therein specified, and no doubt is entertained that the writ in all cases falling within that section, may be allowed by either of the judges of the circuit court, as well when the hearing is at chambers as when the application is presented in open court. An argument upon that point is unnecessary; but the prayer of the petition is denied expressly upon the grounds that the circuit court cannot grant a bill of exceptions in a criminal case, and that a writ of error from the supreme court to the circuit court will not lie to remove the judgment of the circuit court in such a case into the supreme court for re-examination. Bills of exceptions in the federal courts are required to be drawn as at common law, under the statute of Westminster II. (13 Edw. I. c. 31), passed in the year 1285, and of course they must be taken during the trial and before the jury retire from the bar, and must be seasonably sealed by the judge as therein required. 1 Pick. St. 206; 2 Tidd, Prac. 862; 1 Arch. Prac. (11th Ed.) 443; 2 Bac. Abr. 113.

Exceptions under that statute were never allowed in criminal cases in the courts of the parent country; and from the moment it was adopted as the rule of decision in the federal courts to the present time, its application, without any exception, has uniformly been confined to civil actions. 1 Chit. Cr. Law, 622; 1 Lev. 68; 1 Sid. 65; Rex v. Stratton, 21 Howell. St. Tr. 1187; U. S. v. Gibert [Case No. 15,204]; People v. Holbrook, 13 Johns. 90; Ex parte Barker, 7 Cow. 143; People v. Vermilyea. Id. 108; 1 Phil. Ev. 997.

Authority to grant writs of error to the circuit courts to remove criminal cases into the supreme court for re-examination in matters of law, might undoubtedly be vested in the justices of the supreme court, but the insuperable difficulty in the way of exercising any such power at the present time is, that congress has not conferred any such jurisdiction. Such judicial power as belongs to the United States was created by the constitution, and the provision is that it shall be vested in one supreme court and in such inferior courts as the congress may from time to time ordain and establish; and the second section of the same article provides that the judicial power shall extend to all cases in law and equity arising under this constitution, the laws of congress, and treaties made or which shall be made under their authority, and to all the other cases and controversies therein enumerated, subject of course to the rule of construction and the limitation in the eleventh article of the amendments. Obviously, the words "all cases in law" are comprehensive enough to include criminal cases as well as civil actions, but the difficulty in assuming jurisdiction without an act of congress, arises from the provision contained in a subsequent clause of the same section, which will presently be noticed. Original cognizance of all cases affecting ambassadors, other public ministers, and consuls, and those in which a state shall be a party, is confided to the supreme court without any qualification; but the provision in respect to the appellate jurisdiction of that court is that "in all the other cases before mentioned, the supreme court shall have appellate jurisdiction, both as to law and fact, with such exceptions and under such regulations as the congress shall make." No dispute, it would seem, can ever arise as to the original jurisdiction of the supreme court, as it is conferred in unambiguous terms and without any qualification, and the cases to which it extends are specifically enumerated; but the language employed in describing the appellate jurisdiction of that tribunal, is not quite so cautiously guarded, and it is conferred subject to such exceptions as congress may make, and must be exercised under such regulations as congress may prescribe. Unexplained, it would extend in all cases to the facts of the case as well as to the law; but the next clause of the same section provides that the trial of all crimes, except in cases of impeachment, shall be by jury; and the seventh amendment ordains that no fact tried by a jury shall be otherwise re-examined than according to the rules of the common law. Parsons v. Bedford, 3 Pet. [28 U. S.] 447, 448. Exceptions to the appellate jurisdiction of the supreme court, as conferred in the second section of the third article of the constitution, it is conceded, may be made by congress, but the argument is that none have been made; and the petitioner insists that until exceptions are made by congress, the appellate jurisdiction of the supreme court extends to all cases whatsoever, civil or criminal, arising under the constitution and laws of the United States, except such as are included in the original jurisdiction of that court. Ingeniously put and well argued as the proposition has been, the court might hesitate to reject it, if the question was res integra; but it is not, as is very properly conceded by the petitioner. Even viewed as a theory of new impression, the argument in support of it is not satisfactory, as it assumes that the jurisdiction exists unless it be shown that it is excluded by some express exception in an act of congress. Separated from the closing sentence of the clause in question, the con-

struction suggested might be correct; but the whole clause must be read as it stands, and when so read it as clear that the appellate jurisdiction of the supreme court, if congress legislates upon the subject, must be exercised under such regulations as congress shall prescribe, as it is that the appellate jurisdiction is conferred with such exceptions as congress shall make. Undoubtedly, the powers of the supreme court, both original and appellate, are given by the constitution, and not by the judiciary act, as is sometimes supposed; but the appellate jurisdiction of that tribunal is limited and regulated by the judiciary act and other kindred acts upon the same subject. Had congress organized the supreme court without any regulations as to the manner in which the court should exercise its powers, the appellate jurisdiction of the court, as conferred in the constitution, would have been as untrammelled as its original jurisdiction has been throughout our judicial history. Difficulties and embarrassments for want of such regulations would undoubtedly have been encountered at every step; but the better opinion is, that congress cannot defeat the appellate jurisdiction of the supreme court by omitting to enact regulations for its exercise, as authorized by the constitution. Congress, it is true, has not declared in express terms that the appellate jurisdiction of the supreme court shall not extend to criminal cases, nor to civil actions or suits in equity where the matter in dispute, exclusive of costs, does not exceed the sum or value of $2.000; but congress has described affirmatively the appellate jurisdiction of that court, and that affirmative description has always been held "to imply a negative on the exercise of such appellate power as is not comprehended within it." U. S. v. More, 3 Cranch [7 U. S.] 170; Durousseau v. U. S., 6 Cranch [10 U. S.] 314.

Original cognizance, concurrent with the courts of the several states. is conferred upon the circuit courts, by the eleventh section of the judiciary act, of all suits of a civil nature, at common law, or in equity, where the matter in dispute, exclusive of costs, exceeds the sum or value of $500, and the United States are plaintiffs or petitioners, or an alien is a party, or the suit is between a citizen of the state where the suit is brought and a citizen of another state. 1 Stat. 78.

Unquestioned power is also conferred upon the supreme court by the twenty-second section of the same act, to re-examine upon writ of error final judgments in civil actions rendered in a circuit court, where the matter in dispute, exclusive of costs, exceeds the sum or value of $2.000; and detailed regulations are enacted, prescribing the steps to be taken in suing out the writ and defining the manner of exercising the power, as contained in the same and subsequent sections of that act; but they all have respect to the removal of civil actions at common law, suits in equity, or causes of admiralty and maritime jurisdiction. Criminal cases are not even mentioned in those regulations, nor is any one of them of a character to be applied in the removal of an indictment or judgment in a criminal case, from the circuit court into the supreme court for re-examination. Viewed in the light of those regulations, as the case should be, the implication is very strong that congress at that time did not intend that the appellate jurisdiction of the supreme court, as therein described, should extend to any cases other than those to which those regulations applied; and the presumption that criminal cases were intentionally excepted therefrom is much strengthened by the fact that the original jurisdiction of the circuit courts over crimes and offences cognizable under the authority of the United States, is conferred by the same section in that act, which gives those courts original cognizance, concurrent with the courts of the several states, of suits of a civil nature at common law and in equity. 1 Stat. 78.

Ample provision was made in that act for the re-examination of final judgments and decrees in civil actions and suits in equity, and in causes of admiralty and maritime jurisdiction, where the matter in dispute, exclusive of costs, exceeds the sum or value of $2.000; but no provision is made for the re-examination of criminal cases, or of cases of a civil nature, of any kind whatsoever, where the matter in dispute is less than the sum or value prescribed in the twenty-second section of that act.

Alterations have since been made in the regulations upon that subject, such as substituting appeals in the place of writs of error for the removal into the supreme court of decrees in equity, and decrees in admiralty cases, and of prize or no prize, and for writs of error in revenue cases, irrespective of the amount in dispute, but none of the new regulations afford any support to the present application, or give any countenance whatever to the theory that a writ of error under any circumstances will lie in a criminal case to a circuit court. Repeated decisions of the supreme court have established the opposite rule, and those decisions have been too long acquiesced in as sound expositions of the judiciary act to be changed without an act of congress. Ex parte Kearney, 7 Wheat. [20 U. S.] 42; Ex parte Watkins, 3 Pet. [28 U. S.] 201; Forsyth v. U. S., 9 How. [50 U. S.] 571; In re Kaine, 14 How. [55 U. S.] 120; Ex parte Watkins, 7 Pet. [32 U. S.] 568; Ex parte Gordon, 1 Black [66 U. S.] 505; Bish. Cr. Proc. § 940.

Efforts have been made in congress at different periods to extend the appellate jurisdiction of the supreme court so as to include criminal cases, but the measure has never received much support, as it was fore-

seen that it would increase the business of that court beyond what the judges could accomplish, and would necessarily lead to such delays as would tend to defeat the great purpose intended to be accomplished in the administration of criminal justice.

Petition denied.

Mr. Butler.—I now make application for a writ of error coram vobis, returnable before the circuit court. [See Case No. 16,-056.]

Judge CLIFFORD intimated that he was of the impression that in the practice of the circuit court, the writ coram vobis had been substantially superseded by the practice of a petition (with an assignment of errors annexed) to set aside the proceedings for informalities and defects in the record. It was then arranged that that course should be adopted, and the court agreed to hear the application, with Judge SPRAGUE. at Boston, on Tuesday morning next, at the circuit court room.